

December 27, 2016

**VIA ECF**
-----------------------------------------
Honorable Carol Bagley Amon
United States District Judge
Eastern District of New York
225 Cadman Plaza East,
Brooklyn, NY 11201

                Re:    *Zygouras v. BR Construction & Stone, Inc. et al* .
                       Civil Action No.: 1:15-CV-03835-CBA-PK

Dear Honorable Carol Bagley Amon:

      Our office represents Theodoros Zygouras, the Plaintiff in the above-referenced matter. We write jointly with Counsel for the Defendants, James M. Kernan, Esq. in accordance with the Court's Order dated December 9, 2016, to inform the Court that the parties have reached a settlement in the above-referenced matter and to explain how the settlement terms are in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

      The parties intend to file a Stipulation of Dismissal with prejudice once full payment has been received by Plaintiff and Plaintiff's Counsel, as stipulated by the settlement agreement. Accordingly, we respectfully request that Your Honor does not dismiss this case until such Stipulation has been filed with the Court.

### Procedural and Factual history

      On June 30, 2015, Plaintiff Theodoros Zygouras filed a Complaint alleging violations of minimum wages and overtime wages under the Fair Labor Standards Act ("FLSA"). He asserted supplemental jurisdiction for the equivalent state law claims under New York Labor Law ("NYLL").

      Specifically, Plaintiff alleged that he was employed by Defendants BR Construction & Stone, Inc., Evros Kavazis, and Stefan Bolozan from March 2011 to May 2013, to drive to specified locations to install granite countertops. Plaintiff was paid an amount of six hundred and fifty dollars ($650) per week irrespective of the number of hours worked by him. However, from

February 2013 to May 2013, the Plaintiff was paid a flat rate of Three Hundred and Fifty Dollars ($350.00).

Plaintiff alleges that he worked in excess of 66 hours per week and was not paid any overtime wages for hours worked over forty (40) hours per week. Defendants also failed to pay the Plaintiff his spread-of-hours pay. Defendants compensated the Plaintiff for some weekends at a flat rate of approximately One Hundred Thirty Dollars ($130.00) per day which was reflected on his pay stub as "Mileage Reimbursement". However, the Plaintiff was not required to be compensated for mileage since he was driving a company vehicle. Finally, Plaintiff alleges that he was not given accurate wage statements or wage notices pursuant to NYLL 195(1) and (3).

Defendants deny the material allegations in the Complaint and contend that Defendants did not engage in any illegal employment practices. The Defendants allege that Plaintiff was working for a different company during some of the time alleged in the Complaint and did not work over forty (40) hours per week. Moreover, Defendants dispute the employment period of Plaintiff and claim that Plaintiff did not start working for them until August 2012, when Corporate Defendant in fact began its operations.

## The Settlement Amount

Pursuant to the terms of the settlement agreement, Defendants agree to pay Plaintiff and their attorneys the total sum of Thirty-Five Thousand Dollars and Zero Cents ($35,000.00) (hereinafter referred to as the "Settlement Payment"). The Settlement amount is due and payable as follows; (i) Twenty-Five Thousand Dollars ($25,000) less any applicable tax withholdings to be paid to Plaintiff as wages in equal weekly installments over a nine month period beginning from November 10, 2016 to be reported on a valid IRS W-2 Form; (ii) Any installment payments that accrue between November 10, 2016 and the time of execution of the settlement agreement by both parties to be paid to Plaintiff as a lump sum; and (iii) Ten Thousand Dollars ($10,000) with no tax withholdings to be paid to Plaintiff's attorneys on January 10, 2016 to be reported on a valid IRS Form 1099.

The settlement was a result of an arm's length negotiation between experienced attorneys and reflects a suitable compromise over the issues in dispute in accordance with the decision of *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). A court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008); *see also Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.") In addition, the Court has to consider whether "the settlement agreement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Wolinsky v. Scholastic Inc.*, 900 F.Supp.2d 332, 225 (S.D.N.Y. 2012).

Throughout the litigation, there were sharply contested factual and legal disputes that went to the heart of Plaintiff's claims. In particular, the hours worked by Plaintiff were heavily disputed. While Plaintiff claimed to have worked more than sixty-six (66) hours per week throughout his employment with Defendants, Defendants allege that Plaintiff worked less than forty (40) hours per week. Neither Plaintiff, not Defendant, had any documents to substantiate their claims. In addition, the Plaintiff's employment period with Defendants is disputed, as described above.

Finally, there is a dispute as to whether any liquidated damages would be recovered, even if Plaintiff was successful in establishing a back wages claim. There is no indication that the Individual Defendants, Evros Kavazis and Stefan Bolozan, were aware of any FLSA or NYLL violation. The fact that, for a substantial period of time, Plaintiff's hourly rate of pay was in excess of the minimum wage seems to negate the operation of any type of corporate policy by Defendants designed to cheat employees of their lawful wages. As such, Defendants may very well have been able to establish a good faith defense pursuant to 29 U.S.C. §§ 216(b) and 260. *See further Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)(an award of liquidated damages is not available under the FLSA or the NYLL if the employer acts in good faith and has reasonable grounds for believing that its conduct was not in violation of the FLSA or NYLL).

Considering all the above factual and legal disputes, a settlement is advantageous to both parties at this time.

### Other Settlement Terms

The terms of the Settlement Agreement are in accordance with the decision of *Cheeks v. Freeport Pancake House, Inc*., No. 14-299 (2d Cir. 2015). The settlement allows for the settlement agreement to be publically filed for the purpose of judicial review for fairness.

The settlement agreement does not contain any confidentiality or non-disparagement clauses allowing Plaintiff the opportunity to make truthful statements regarding his experience in litigating this action. The mutual release clause, according to which Plaintiff and Defendants are reciprocally released from claims against each other, is fair and reasonable since it is drafted to mutually benefit both parties. *Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *5 n.8 (S.D.N.Y. Nov. 6, 2015) ("A mutual release will also ensure that an employer is not simply leveraging 'a release from liability unconnected to the FLSA,' but that any claim that the employer might have against the plaintiff (such as theft or destruction of property, in the case of a restaurant worker) would also be released.") In addition, the releases are narrow in scope and limited to employment-related claims.

### Plaintiff's Attorneys' Fees are Fair and Reasonable

Pursuant to the settlement agreement, Plaintiff's counsel will receive Ten Thousand and 00/100 Dollars ($10,000) of the recovery in this litigation as attorneys' fees and costs. "The trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common

fund cases like this one." *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2nd Cir. 2010); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005). Contingent fee agreements in wage and hour cases favor public policy and are "meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, 2010 WL 69359 at *3 (S.D.N.Y. 2010).

Furthermore, there is ample authority in this circuit holding that a 33% attorneys' fee is well within the range of fees typically awarded in wage and hour cases. *See Castaneda v. My Belly's Playlist LLC.* No. 15 Civ. 1324 (JCF)(S.D.N.Y. Aug. 2015) (awarding the Plaintiff's attorneys a contingency fee of one-third to account for risks in litigation); *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126 NGG VMS, 2014 WL 6621081, at *9 (E.D.N.Y. Nov. 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Clark v. Ecolab, Inc.,* No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); *McMahon v. Olivier Cheng Catering & Events, LLC,* No. 08 Civ. 8713 (PGG), 2010 WL 2399328, at *7 (S.D.N.Y. Mar. 3, 2010) (awarding 33% of the $400,000 settlement fund); *deMunecas v. Bold Food, LLC,* 2010 WL 3322580, at *4 (S.D.N.Y. Aug. 23, 2010) (awarding 33% of an $800,000 fund in an FLSA case); *Beckman v. KeyBANK, NA*, 293 F.R.D. 467, 481 (S.D.N.Y.2013) (awarding 33% of a $4.9 million settlement fund which amounted to $1.6 million in an FLSA class action).

Compared to the above case law, the Plaintiff's counsel seeks to recover approximately 28% fee from the entire settlement amount which is a reasonable and modest sum.

## "Cross-check" with Plaintiff's Counsel's lodestar

All the work in this case was closely supervised by Joseph Nohavicka, a partner with over 20 years of experience. When applying the lodestar method as a "cross check" - as per *Goldberger v. Integrated Resources, Inc.*, 209 F. 3d 43 (2d Cir. 2000) - it can be seen that Plaintiffs' Counsels' hourly rate under this method in fact exceeds the amount under their contingent fee arrangement. In the recent case of *Wilian Encalada v. Baybridge Enterprises Ltd*., 14-3639-cv (2d Cir. 2015), it was held that a $350 hourly fee is a reasonable fee for an attorney representing a Plaintiff in an FLSA case.

Plaintiff's counsel's time litigating this action, which included attendance at multiple electronic and in-person conferences, submissions to the Court and a full day trial, exceeds 145 hours, making the total amount of attorneys' fees equal to $50,750.

As such, Plaintiffs' counsel believe that the contingency fee in this case is fair and reasonable, particularly because it is a considerably lesser amount than the lodestar.

**Conclusion**

In full consideration of the issues presented in *Cheeks*, we believe that the parties' agreement is fair and reasonable and that the settlement should be approved.

We thank the Court for its consideration in this matter.

Respectfully submitted,

**PARDALIS & NOHAVICKA, LLP**

By:   /s/Ariadne Panagopoulou
Ariadne Panagopoulou
*Counsel for the Plaintiff*


cc:   James M. Kernan, Esq.
*Counsel for the Defendants*